**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **EMPIRICAL PRIME, LLC.,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. |
| **MUSLET, LLC.** | ) ) ) |
| Defendants. | ) ) |

## COMPLAINT

COMES NOW Plaintiff Empirical Prime, LLC and for its claims against Defendant Muslet, LLC, states as follows:

## PARTIES AND JURISDICTION

1. Plaintiff Empirical Prime, LLC ("Empirical") is a Missouri limited liability company, with no members who are Kansas citizens.

2. Defendant Muslet, LLC ("Muslet") is a Kansas limited liability company. The only member of Defendant publically listed with the Kansas Secretary of State is Rezek M. Muslet.

3. On information and belief, Mr. Muslet is the sole member of Muslet and is a Kansas citizen residing in Overland Park, Kansas.

4. There is complete diversity of citizenship between Empirical and Muslet.

5. This court has jurisdiction over this case on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332, because it is a civil action between citizens of different states and the amount in controversy exceeds $75,000.00.

6. Personal jurisdiction is appropriate over Muslet pursuant to K.S.A. § 60-308(b)(2) because Muslet is a limited liability company organized pursuant to the laws of the State of Kansas, owns property in the State of Kansas and has substantial, continuous and systematic contact with

the State of Kansas which support jurisdiction consistent with the constitutions of the United States and of the State of Kansas.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Muslet resides in the District of Kansas.

**FACTS COMMON TO ALL COUNTS**

8. In early 2021, Empirical was seeking commercial space in the Kansas City, Kansas area in order to conduct its recruiting and staffing business, known as "Prime Staffing."

9. Muslet owns commercial property located at 615 Central Avenue, Kansas City, Kansas 66101 ("Premises").

10. Empirical desired to lease the Premises for its staffing operations and began negotiating the terms of a lease with Muslet. During these negotiations, Muslet represented that the Premises was zoned for commercial use and that it had the requisite certifications and licenses needed for Empirical to conduct business at the Premises.

11. On March 26, 2021, the parties signed a Commercial Lease for the Premises.

12. A true and correct copy of the Commercial Lease is attached at **Exhibit A**.

13. The term of the Commercial Lease was for two years commencing on May 1, 2021, with an additional two-year lease option. Empirical was to pay a $1,850.00 deposit and remit $1,850.00 for monthly rent for the first two years. If Empirical exercised the two-year renewal, the monthly rent would increase to $2,000 a month.

14. Under the Commercial Lease, Empirical obtained signage rights on the exterior of the Premises.

15. Under the Commercial Lease, Muslet agreed that by or before May 1, 2021, the property would be "move-in ready" and be able to be fully occupied.

16. Muslet also agreed to install new flooring and that the Commercial Lease provided that "[Muslet] shall install the tile flooding prior to the beginning of the Lease Term."

17. On or about April 1, 2021, Empirical sent a check to Muslet for $1,850.00 for the security deposit.

18. On April 9, 2021, Empirical ordered a custom sign to be mounted on the exterior of the Premises.

19. On or about May 1, 2021, Empirical paid its first month rent of $1,850.00 and began to take steps to move into the Premises.

20. Empirical discovered that the flooring had not been completed as required under the Commercial Lease. Empirical notified Muslet that the flooring had not been installed, and Muslet assured Empirical the flooring would be completed in short order.

21. Based on these representations and assurances, Empirical began business operations at the Premises.

22. In June 2021, Empirical hired contractors to buildout the space for use as offices for the staffing company at a total cost of $7,243.39.

23. On or about June 28, 2021, the Building Inspector for the Unified Government of Wyandotte County and Kansas City, Kansas, visited the premises. The Building Inspector notified Empirical's staff that the Premises did not have a certificate of occupancy as Muslet had failed to request an inspection of the Premises needed for certification.

24. The building inspector issued a citation and required all of Empirical's staff to vacate the Premises.

25. This came as a surprise to Empirical. Muslet represented, not only in the Commercial Lease, but in numerous communications that the Premises was move-in ready and capable of being occupied.

26. After receiving the citation, Empirical notified Muslet of the issue. Muslet assured Empirical that the issue would be immediately corrected and that Empirical could continue to conduct business operations at the Premises.

27. On or about July 31, 2021, the Building Inspector returned to the Premises. This time the Building Inspector required all Empirical staff to permanently vacate the Premises as there was still no certificate of occupancy permitting Empirical to occupy the Premises.

28. The Building Inspector stated that if Empirical's staff returned to the Premises, he would issue further citations.

29. Empirical has not conducted business at the Premises since being physically removed by the building inspector on or about July 31, 2021.

30. Despite having been removed from the Premises by the Building Inspector, Empirical proceeded to pay the August 2021 rent to Muslet. Muslet assured Empirical that the issue with the certificate of occupancy would be resolved within days.

31. By the end of August 2021, it was becoming clear that Muslet was not going to be able to obtain a certificate of occupancy in a timely manner.

32. The disruption to Empirical's business operations was so severe that it had no choice but to find a new location resulting in significant business interruption costs to Empirical.

33. On October 22, 2021, Muslet contacted Empirical. Muslet demanded that Empirical comply with the Commercial Lease and pay rent for the months of September, October and November 2021.

34. Empirical refused to pay rent because Muslet failed to deliver possession of a premises that was capable of being occupied.

### COUNT I: DECLARATORY JUDGMENT

35. Plaintiff incorporates and re-alleges the paragraphs above.

36. There has been and continues to be a dispute between Empirical and Muslet regarding the enforceability of the Commercial Lease.

37. Muslet failed to deliver possession of a premises that was capable of being occupied, such that the Commercial Lease never took effect.

38. Muslet, however, has taken steps to enforce the Commercial Lease by demanding unpaid rent despite having failed to deliver possession of the Premises.

39. Empirical seeks the entry of a declaratory judgment, which will resolve the controversy regarding whether Muslet's failure to obtain a certificate of occupancy for the Premises, resulted in the Commercial Lease never commencing.

40. Empirical also seeks the entry of a declaratory judgment, which will resolve the controversy regarding whether Muslet's failure to timely complete the flooring of the Premises, resulted in the Commercial Lease never commencing.

41. The entry of declaratory judgment will resolve the actual controversy.

WHEREFORE, Empirical prays the Court enter judgment in its favor and against Muslet:

a. Declaring that the Commercial Lease is of no effect as a condition precedent to the commencement of the Commercial Lease did not occur;

b. Since the Commercial Lease is of no effect, Empirical has no contractual obligations to Muslet; and

c. For such other and further relief as the Court deems just, equitable and proper.

## COUNT II: UNJUST ENRICHMENT/ QUANTUM MERUIT

42. Plaintiff incorporates and re-alleges the paragraphs above.

43. Empirical conferred a benefit on Muslet by remitting a deposit and monthly rent to Muslet.

44. Muslet accepted the deposit and monthly rent paid by Empirical.

45. Empirical also made improvements to the Premises, including an exterior sign for the Premises.

46. Muslet, however, failed to obtain the required certificate of occupancy for the Premises, which resulted in Empirical being removed from the Premises by the building inspector.

47. Muslet's acceptance and retention of the deposit, the monthly rent and the improvements to the Premises under these circumstances renders Muslet's retention inequitable.

WHEREFORE, Empirical prays the Court enter judgment in its favor and against Muslet for an amount equal to the deposit, monthly rent, and buildout costs, Empirical has paid to Muslet, pre-judgment and post-judgment interest, and costs, and further relief as the Court deems just, equitable and proper.

## COUNT III: FRAUD

48. Plaintiff incorporates and re-alleges the paragraphs above

49. Muslet represented that it obtained the requisite certifications and licenses for the Premises needed for Empirical to conduct business at the Premises.

50. This representation was false.

51. After the building inspector had issued a citation in June 2021, Muslet again represented that it was in the process of obtaining the necessary certifications and licenses needed for the Premises.

52. This representation was false.

53. After the building inspector had returned in July 2021 and removed Empirical from the Premises, Muslet again represented that it was in the process and would be obtaining the necessary certifications and licenses for the Premises within days.

54. That representation was false.

55. At the time Muslet made these representations, Muslet knew these representations were false or recklessly made these representations for the purpose of inducing Empirical to act upon them.

56. Empirical, being unaware that Muslet's representations were false or untrue, reasonably relied and acted upon Muslet's representations.

57. As a direct and proximate result of Empirical' s reliance on the representations of Muslet, Empirical has sustained damage, including but not limited monies paid to Muslet based on the representations, and damage to its business operations and lost profits for having to find a new location for its business operations.

WHEREFORE, Empirical prays for judgment against Muslet in an amount exceeding $75,000.00, plus, pre-judgment and post-judgment interest, costs of this action, and other relief that may be necessary to achieve justice.

## COUNT IV: NEGLIGENT MISREPRESENTATION

58. Plaintiff incorporates and re-alleges the paragraphs above.

59. Muslet had a pecuniary interest in the business transaction with Empirical.

60. Muslet represented that it obtained the requisite certifications and licenses for the Premises needed for Empirical to conduct business at the Premises.

61. This representation was false.

62. After the building inspector had issued a citation in June 2021, Muslet again represented that it was in the process of obtaining the necessary certifications and licenses needed for the Premises.

63. This representation was false.

64. After the building inspector had returned in July 2021 and removed Empirical from the Premises, Muslet again represented that it was in the process and would be obtaining the necessary certifications and licenses for the Premises within days.

65. That representation was false.

66. Muslet failed to exercise reasonable case or competence in obtaining or communicating these false representations.

67. These representations were supplied for Empirical' s benefit related to Muslet's business with Empirical.

68. Empirical justifiably relied on these representations.

69. As a direct and proximate result of Empirical' s reliance on the representations of Muslet, Empirical has sustained damage, including but not limited monies paid to Muslet based on the representations, and damage to its business operations and lost profits for having to find a new location for its business operations.

WHEREFORE, Empirical prays for judgment against Muslet in an amount exceeding $75,000.00, plus, pre-judgment and post-judgment interest, costs of this action, and other relief that may be necessary to achieve justice.

### COUNT V: BREACH OF CONTRACT
**(Alternative Relief)**

70. Plaintiff incorporates and re-alleges the paragraphs above.

71. Should the Court find that certain conditions precedent occurred whereby the Commercial Lease went into effect, Empirical pleads as an alternative, that Muslet is still liable o Empirical as Muslet breached the terms of the Commercial Lease.

72. Under the Commercial Lease, Muslet agreed that by or before May 1, 2021, the property would be "move-in ready" and be able to be fully occupied.

73. Both expressly and implicitly implied in the Commercial Lease was that Muslet had the obligation to ensure Empirical had quiet enjoyment of the Premises, free of interference.

74. Muslet breached the Commercial Lease by failing to obtain the necessary certifications and licenses needed for Empirical to occupy the Premises and have quiet enjoyment of the Premises.

75. As a direct and proximate result of Muslet's breach of the Commercial Lease, Empirical has been damaged.

WHEREFORE, Empirical prays for judgment against Muslet in the amount exceeding $75,000.00, plus pre-judgment and post-judgment interest, the costs of this action, and any other relief that may be necessary to achieve justice.

## DEMAND FOR JURY TRIAL

Empirical demands a trial by jury to be conducted in Kansas City, Kansas.

Respectfully submitted,

SPENCER FANE LLP

/s/ *Patrick J. McAndrews*
Patrick J. McAndrews           KS#24721
1000 Walnut Street, Suite 1400
Kansas City, Missouri  64106-2140
(816) 474-8100
(816) 474-3216 (facsimile)
pmcandrews@spencerfane.com

*Attorneys for Plaintiff*